# EXHIBIT B



IN THE SUPERIOR COURT OF JUDICATURE
THE HIGH COURT OF JUSTICE
(COMMERCIAL DIVISION)
ACCRA

SUIT NO BDC/32/10

**THE ATTORNEY-GENERAL** - PLAINTIFFS
Attorney-General's Department
Ministries
Accra

AND

1. **BALKAN ENERGY COMPANY LLC**
   One Hickory Center
   1800 Valley View Lane
   Suite 300, Dallas
   Texas 75234, USA

2. **BALKAN ENERGY (GHANA) LIMITED** - DEFENDANTS
   Fidelity House
   20 Ring Road Central
   Accra

3. **MR. PHILLIP DAVID ELDERS**
   1706 Hatters Court
   Sugar Land
   Texas 77479
   USA

## STATEMENT OF DEFENCE

1. Save as is herein after expressly admitted, the Defendants deny each and every allegation in the Statement of Claim as if the same were set out *in extenso* and denied *seriatim*.

2. The Defendants admit paragraph 1 of the Statement of Claim.

3. Save the claim that the 1st Defendant represents itself as a private company incorporated in the Netherlands, the Defendants admit paragraph 2 of the Statement of Claim.

4. The Defendants state in further response to paragraph 2 that the 1st Defendant is duly incorporated in the Netherlands.

5. Save the claim that the 3rd Defendant claims to have been appointed Senior Vice President of the 1st Defendant Company, the Defendants admit paragraph 3 of the Statement of Claim.

6. The Defendants maintain in further response to paragraph 3 that the 3rd Defendant was duly appointed senior Vice President of the 1st Defendant Company and is the Managing Director of the 2nd Defendant Company.

7. Save the claim that Syntek West Inc. is the sole shareholder of Balkan UK, the Defendants admit paragraph 4 of the Statement of Claim.

8. The Defendants state in further response to paragraph 4 of the Statement of Claim that Balkan UK is owned wholly by Balkan USA which is in turn owned by Syntek West Inc. and EPC International, Inc.

9. The Defendants admit paragraphs 5 and 6 of the Statement of Claim but maintain that the 27th July 2007 Power Purchase Agreement ("PPA") abrogated any and all prior written and oral understandings concerning the project to be undertaken by the 2nd Defendant thus rendering the 16th May 2007 Memorandum of Understanding and the 24th May 2007 Technical and Commercial Proposal redundant and irrelevant to the legal relationship between the parties.

10. The Defendants add that in or around May 2007 the then Minister for Energy, Hon. Joseph Kofi Adda, MP, invited the 3rd Defendant to view the uncommissioned and incomplete Osagyefo Power Barge and expressed the plans of the Ministry of Energy ("MOE") to upgrade and expand Ghana's electricity generation capacity by refurbishing, commissioning and expanding the Osagyefo Power Barge (the "Project")

11. After this visit, the 1st Defendant sent the Plaintiff an Expression of Interest document dated 10th May 2007 and was subsequently invited by the MOE to develop its plans for the Project by a letter dated 11th April 2007.

12. The 1st Defendant accepted the invitation which resulted in the 16th May 2007 Memorandum of Understanding.

13. Subsequently the Plaintiff, acting by and through the MOE, entered into the PPA with the 1st Defendant.

14. The Defendants further add that the PPA was duly executed by the said Hon. Joseph Kofi Adda, MP, and the 3rd Defendant acting in his capacity as the 2nd Defendant's Managing Director.

15. The Defendants reiterate in response to paragraph 7 and 8 of the Statement of Claim that even if said representations were made, they were specifically abrogated by the PPA and thus both the alleged representation and any effect they may have had on the parties is rendered irrelevant in the scheme of events.

16. The Defendants add that it was because Ghana was experiencing an electricity crisis that the parties agreed to the short commissioning timeline.

17. The Defendants deny paragraphs 9 to 12 of the Statement of Claim put the Plaintiff to strict proof of the averments therein.

18. The Defendants state in response to paragraph 13 of the Statement of Claim that the 2nd Defendant fulfilled all its obligations under the PPA and that it is rather the Plaintiff which failed to fulfil its contractual obligations under the PPA.

19. The Defendants further state that the parties agreed under the PPA that all conditions precedent were to be completed by both parties within 14 days of its execution by 10th August 2007.

20. The Defendants maintain that due to delays by the Plaintiff to meet the conditions precedent, the Effective Date was not declared until ninety-four (94) days after the originally scheduled date, on 31st October 2007.

21. The Defendants add that that under clause 7.3 of the PPA, every delivery milestone is deferred by the exact amount of delay that the Plaintiff's breaches cause.

22. The Plaintiff agreed under clause 3 of the PPA to enable the 2nd Defendant carry out the Project by, among other things, providing the necessary site electricity for the 2nd Defendant to carry out its work on the Osagyefo Barge, assisting with work permits, governmental approvals for the workers, importing equipment to the site, installing and connecting a transmission line.

23. The Plaintiff also agreed under clause 3.3(ii) of PPA to provide relay protection and communication equipment necessary to connect the Osagyefo Barge to the national grid.

24. The Plaintiffs however failed to meet these conditions and Defendants contend that this failure was a breach of its contractual commitments.

25. The Defendants also state that the Plaintiff has to date, failed to provide reliable site electricity, a transmission line, relay protection and communication equipment allowing a safe connection to the national grid for the Project which failure the Plaintiff has admitted on multiple occasions.

26. The Defendants add that the Plaintiffs failure resulted in myriad and serious consequences for the Project including the 2nd Defendant's inability to commission the Osagyefo Barge on both the originally scheduled date of 10th March 2008 or on the subsequent testing date of 28th October 2008 that the 2nd Defendant notified the Plaintiff of, after giving the Plaintiff further opportunity and time to fulfill its obligations to provide adequate site electricity, transmission line and grid connectivity.

27. The Plaintiff also repeatedly failed to assist the 2nd Defendant with customs procedures in violation of clause 2.7 of the PPA relating to the importation of equipment and the 2nd Defendant, by a letter dated March 30, 2008 and addressed to the Plaintiff complained that it continued to struggle through the approval process for clearing equipment through customs thus causing further delay.

28. The Defendants maintain that the Plaintiff's failure to provide start-up electricity and full grid connectivity for the Project was in breach of its contractual obligations under clauses 3.3(ii) and 11.9 of the PPA and has also resulted in the 2nd Defendant being unable to meet both interim and final deadlines under PPA, such as the provision of construction power in August 2007.

29. The Defendants add that another consequence of the Plaintiff's breach of clauses 3.3(ii) and 11.9 of the PPA was to effectively stay the 2nd Defendant's obligations under it until the Plaintiff transmits adequate electricity necessary to power the Osagyefo Barge.

30. During a site meeting held between the parties a government delegation admitted to being culpable for the problems relating to grid connection and customs.

31. The Defendants summed up this discussion in a letter dated 10th June 2008 and addressed to the Plaintiff and reiterated that the continuous delays caused by the slow product clearance process would delay the commissioning of the power plant.

32. Save that it was the Plaintiff which originally invoked clause 11.9 of the PPA by a letter dated 1st September 2009, the Defendants admit paragraph 14 of the Statement of Claim.

33. The Defendants state that by a letter dated 22nd October 2008 the 2nd Defendant notified the Plaintiff that should it continue to refuse to remedy its default, the 2nd Defendant would be compelled to enforce its rights under clause 11.9 of the PPA.

34. Pursuant to clause 11.9 of the PPA, the 2nd Defendant by a letter dated 25th November 2008, sent the first of a series of monthly invoices for tolling fees to the Plaintiff.

35. Seeking an amicable resolution of the matter, the 2nd Defendant meet with the Minister of Energy on 24th February 2009 and on 25th February 2009, at the Minister's request, produced a proposal for proceeding with the project on a mutually affordable basis.

36. The Minister subsequently created an inter-ministerial committee to negotiate a settlement, which committee to this day has not reported or come forward with any proposals.

37. The Plaintiff has since completely refused to engage in any bona fide discussion of the above proposals.

38. By a letter dated 20th October 2009, the 2nd Defendant informed the Minister of Energy that twelve (12) monthly invoices for a total amount of US$49,918,680 had become due and payable.

39. The Plaintiff continued to persist in its default, failed to honour the outstanding amounts and refused to engage in settlement negotiations.

40. Realizing that the Plaintiff had no intention of honouring its obligations, the 2nd Defendant tried to draw under the letter of credit provided by the Plaintiff in accordance with clause 11.7 of the PPA.

41. The 2nd Defendant's attempts to draw under the letter of credit proved unsuccessful because the letter of credit provided by the Plaintiff violates the requirements of the PPA provided for in its tenth schedule.

42. The Plaintiff then falsely disputed the invoices resulting in Zenith Bank (Ghana) Limited being unable to make a single payment on any of the invoices.

43. The Defendants adds that the Plaintiff insisted that as it disputed the invoices, the dispute must be referred to arbitration in accordance with clause 22.2 of the PPA before any payments could be made to the 2nd Defendant either directly or under the letter of credit.

44. The Defendants admit paragraphs 15 and 16 of the Statement of Claim and adds that however no funds were located in the Netherlands and therefore no funds have been seized by the 2nd Defendant by way of conservatory attachment or interim preservation.

45. The Defendants add that the Plaintiff was duly served with a copy of the attachment order by diplomatic post and regular post on 5th March 2010.

46. The Defendants further state that in any event the Plaintiff explicitly waived immunity from execution in any jurisdiction under clause 24 of the PPA and is thus not entitled to claim such immunity from jurisdiction, enforcement and attachment or any other legal action in relation to itself, its assets or revenues.

47. The Defendants deny paragraphs 17 and 18 of the Statement of Claim and state that the PPA is not an international business transaction within the meaning of Art 181(5) of the 1992 Constitution and thus no parliamentary approval is required to render the PPA enforceable.

48. The Defendants add that the PPA is a contractual arrangement between the Plaintiff and the 2nd Defendant, a limited liability company incorporated in Ghana, separate and distinct from the 1st Defendant.

49. The Defendants also state in further response to paragraphs 17 and 18 that it was a condition precedent to the continuing obligations of the 2nd Defendant under the PPA that the Plaintiff provides a legal opinion as to the validity, enforceability and binding effect of the PPA.

50. Thus on 26th October 2007 the Plaintiff provided two legal opinions dated 26th October 2007 unambiguously stating that parliamentary approval was not required to render the PPA enforceable and is consequently estopped from claiming the contrary.

51. The Defendants deny paragraph 19 of the Statement of Claim and repeat that there is no statutory requirement for parliamentary approval of arbitration agreements.

52. The Defendants maintain that this action is premature as the PPA provides for a dispute resolution mechanism under clause 22.2, under which any dispute arising from the PPA must first be settled through the direct discussions of the Parties, and should this fail, the parties must refer the dispute to binding arbitration at The Hague, in the Netherlands.

53. The Defendants state that following the Plaintiff's invocation of clause 22.2 of the PPA, the 2nd Defendant filed a Notice of Arbitration in accordance with Article 3 of the Arbitration Rules of UNCITRAL on 23rd December 2009.

54. Pursuant to UNCITRAL Rule 7(1), the parties nominated one arbitrator each: Judge Thomas Mensah was nominated by the Plaintiff and Judge Stephen M. Schwebel was nominated by the Defendant. The two arbitrators nominated Professor Francisco Orrego Vicuna as the Presiding Judge.

55. The Defendants contend that having invoked clause 22.2 of the PPA and having participated and continue to participate in the arbitral proceedings the Plaintiff cannot claim that this clause is unenforceable.

56. The Defendants deny paragraph 20 of the Statement of Claim and maintain that the Plaintiff is not entitled to its reliefs or at all.

DATED IN ACCRA THIS 13th DAY OF October 2010

Bentsi-Enchill, Letsa & Ankomah
Lawyers for the Defendants

The Registrar
High Court (Commercial Division)
Accra

And to the above entitled Plaintiff.